| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| Isaac M. Stephens, | § § § § § § § § § | |
| Plaintiff, | | |
| versus | | Civil Action H-09-00755 |
| Harris County, Texas, et al., | | |
| Defendants. | | |

## Opinion on Summary Judgment

1. *Introduction.*

   A man refused to allow officers to enter his home to search for his grandson. When the officers tried to arrest him, he resisted. One discharged her Taser into his chest. The man says that was excessive force. Because the use of the Taser was reasonable, the officer and the county will prevail.

2. *Background.*

   On March 14, 2007, Detectives Cindy Colluro and K. Keller with the Harris County Sheriff's office went to Isaac M. Stephens's home. They told Stephens that they had a felony arrest warrant for his grandson, Keith Stephens, and asked to search his house. Stephens responded that his grandson lived there but was not home, and he asked to see the warrant. The officers said that one had been issued and that they had the authority to enter the house. Stephens refused to let them in and blocked the doorway.

   After 40 minutes of Stephens's preventing their entry, the officers called a supervisor. Captain J. Satcher and Sergeant J. Bilinovich arrived. Satcher identified himself to Stephens and ordered him to move out of the doorway. Stephens refused. Satcher ordered his arrest.

   Two officers walked up to Stephens and began to handcuff him. He pulled away, and the officers grappled with him. During the struggle, both officers and Stephens fell into the entryway. As Stephens continued to struggle, Colluro shouted "taser, taser" and discharged her Taser into Stephens's chest.

The officers arrested him and searched the house; they did not find his grandson. The officers called an ambulance, but Stephens refused treatment.

3.  *Excessive Force.*

The Constitution requires that seizures be reasonable. An arrest is illegal if during the seizure there is (a) an injury (b) that was caused by an officer's use of force, and (c) a reasonable officer on the scene would have perceived the level of force as excessive. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Colluro's use of the Taser was reasonable. Stephens started by behaving uncooperatively, and he escalated from obstruction to force. The situation facing the officers was simple: They had been sent to arrest a man whom their information showed lived in the house. The man answering the door acknowledged that his grandson lived with him. They asked to enter, and Stephens said no. By blocking the door, he said they could not enter against his wishes. After talking to him for a long time, they had a supervisor come to help. Stephens maintained his recalcitrance. The supervisor ordered his arrest. He fought against being handcuffed. They fell, he flailed and fought. To subdue him, Colluro shot him with her Taser.

Stephens was arrested because he used his body to obstruct the path to his grandson's room. Stephens was not arrested for calling the officers names, as often happens. He was not arrested for questioning the propriety of their arresting his grandson, as often happens. He was arrested for blocking the officers' way and, more seriously, for pulling away when they began to take him into custody. *See* U.S. Const., amend. I (1791).

Using the Taser one time was proportional to an actively hostile man physically blocking the execution of the warrant. Rather than being excessive, the nonlethal shock is one of the least harmful forces that could have subdued him. *See Williams v. Bramer*, 180 F.3d 699, 703-705 (5th Cir. 1999). The Taser minimally harmed Stephens– two small scars from the darts and some bruising from the fall and fight. Of course he was shocked, but in his case, the intended effect was the temporary paralysis.

4.  *Constitutional Rights.*

Since December 15, 1791, people in the United States have been protected from the government's use of force against them. The governments of the United States have been forbidden to seize people whom they have a lawful reason to arrest through gratuitous or

malicious force; this applies to all agents of all governments – law officers, regulators, judges, and legislators. U.S. Const., amend. IV. As the resistance increases, an increasing level of force becomes reasonable. The rights Stephens is asserting are antique and paramount – known to every school child, at least, if he watches television. His case does not fall apart on the law; it falls apart on the facts.

Stephens decided that the only way the officers were going to look in the house for his grandson was by arresting him. When the officers began to handcuff him, he decided that he would go from opposing them passively to opposing them actively.

His objection is only to an officer's deciding to use a Taser when he kept thrashing around with the first two officers on the floor. That response was proportionate to Stephens's direct, immediate acts.

Stephens says that he was injured because the officer was not properly trained in the use of the Taser. None of the facts have suggested that Colluro's education in handling her tools was defective. She deferred shooting him until he had escalated the danger to himself and the officers by tangling with them on the floor. When she did use force, it worked exactly as it should have – no more, no less.

Even if she had somehow erred, and he had specified the error, Stephens has not articulated training that would have precluded it. *See Pineda v. City of Houston*, 291 F.3d 325 (2002). The issue of inadequate training is raised reflexively and argumentatively, not thoughtfully or factually.

5. Conclusion.

Because using the Taser was force congruent with the facts, it was constitutional. Isaac M. Stephens will take nothing from Cindy Colluro and Harris County, Texas.

Signed on April 7, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge